ABBOTT v. CITY OF CHARLEVOIX.

SPECIFIC PERFORMANCE—CONTRACTS—PREPONDERANCE OF EVIDENCE.
    In a suit against the former owner of an electric light and power plant and the city of Charlevoix for the specific performance of certain contracts and for an accounting, where it appears that, although plaintiff had an option from the owner of the plant to purchase it and on the strength thereof he entered into a contract with said city to furnish it electricity for illuminating and other purposes, he never exercised said option or purchased said plant, and never complied with the conditions in his contract with the city, his claim, based on an oral contract, that the city's purchase of the plant after the expiration of his option was for his benefit, *held*, not established by a preponderance of the evidence.

Appeal from Antrim; Chester (Guy M.), J., presiding.    Submitted January 17, 1923.    (Docket No. 118.)    Decided October 1, 1923.    Rehearing denied December 20, 1923.

Bill by Charles S. Abbott against the city of Charlevoix and others for the specific performance of certain contracts, and for an accounting.    From a decree dismissing the bill, plaintiff appeals.    Affirmed.

*John R. Rood,* for plaintiff.

*A. L. Fitch,* for defendants.

MOORE, J.    In 1905 Henry Richardi was the owner of an electric plant at Bellaire, Michigan.    In that year he made a contract with Charlevoix to furnish it with electricity for 20 years.    Later this contract was assigned to the defendant Hydraulic Power & Light Company, in which company Mr. Richardi owned a controlling interest.    Trouble arose between this company and the city of Charlevoix over this contract.    In September, 1917, papers were drawn, the essential parts of which read as follows:

"Memoranda of agreement made and entered into this 8th day of September, A. D. 1917, by and between Henry Richardi, of Bellaire, Michigan, party of the first part, and Charles S. Abbott, of Detroit, Michigan, party of the second part, witnesseth:

"That the said party of the first part in consideration of the sum of one dollar to him in hand paid, and of other valuable considerations, does hereby agree to sell and transfer to the said party of the second part, at any time within sixty days from the date hereof, all of the capital stock of the Hydraulic Light & Power Company, of Bellaire, Michigan, a Michigan corporation, with capital stock of $100,000.00 par value, upon the terms, conditions and considerations hereinafter set forth, viz.:

"1st. The said party of the second part is to cause to be issued pursuant to the regulations of the Michigan railroad commission, a six per cent. first mortgage bond issue in an amount of not to exceed one hundred thousand dollars face value; twenty-three thousand dollars of which is to be made serial and redeemable or payable at the rate of two thousand dollars per annum beginning January 1st, 1919, and to be used

to pay and retire the present bond issue of the said Hydraulic Power & Light Company, now outstanding, and which shall be paid off and retired by said party of the second part or the said company.

"2nd. Out of the remaining bonds to be so issued twelve thousand dollars thereof shall be made serial and payable at the rate of two thousand dollars a year succeeding the retirement of the bonds above provided for in paragraph one to be issued to retire present bond issue balance, and which said $12,000.00 of bonds in this paragraph provided for are to be at once sold and their face value of twelve thousand dollars paid to the party of the first part hereto to apply on the purchase price of the said capital stock of the said Hydraulic Power & Light Company.

"3rd. Out of the remainder of the bonds so to be issued there shall be turned over to the party of the first part hereto, such bonds of the face value of fifty thousand dollars, and which said last mentioned bonds shall be refundable bonds for the full period of thirty years. The remaining of the said $100,000 bond issue, to-wit: $15,000.00 of such bonds to be held if issued, and only negotiated for the purpose of betterments, improvements or extensions of the plant of the said company, its pole lines or other equipment.

"4th. The bonds mentioned in paragraph one above are to be given priority over all other bonds mentioned in paragraph two shall be given priority over the bonds mentioned in paragraph three above.

"5th. It is specifically understood that the purchase of the corporate stock of the said Hydraulic Power & Light Company above provided for shall carry with it the ownership of the power plant as now located at Bellaire, Michigan, with the dam and flowage rights in connection therewith (but not the distributing line in the village of Bellaire or the waterworks or its equipment in Bellaire), and also shall include all contract rights including right of recovery for violation of any past or pending contract with the said city of Charlevoix for electric current as well as any and all other contracts or electric current from said plant, whether the title to any of said property or choses in action shall be in the name of the said Hydraulic Power & Light Company or in the said Henry Richardi or

otherwise.    It being expressly understood and the intent of this instrument is, that the option hereby and herein given shall include all manner of property, real, personal or otherwise used in connection with the operation of the electric business of the said Hydraulic Power & Light Company, including all supplies and equipment, whether now in use or not, excepting the Bellaire village poll line and the pumps, equipment and supplies of the Bellaire Water Supply Company, which supplies the village of Bellaire with water and whose pumps are operated in connection with the said Electric Company.

"In witness whereof the said party of the first part has hereunto set his hand and seal the day and year first above written.

"HENRY RICHARDI.    (Seal)"

"EXHIBIT B.
"Auxiliary Agreement.

"In consideration of the premises set forth in a memoranda of agreement this day made by and between Henry Richardi, of Bellaire, Michigan, as party of the first part, and Charles S. Abbott, of Detroit, Michigan, as party of the second part, being an option agreement for sale of the capital stock of the Hydraulic Power & Light Company of Bellaire, Michigan, it is understood and agreed between the said parties that in the event of its being inadvisable or impractical to sell the $12,000.00 of bonds provided for in paragraph second of said agreement at an adequate price, that in lieu of making sale of such bonds so specified in said paragraph second that the said Henry Richardi may himself take said bonds at their face value or at his option may take, have and receive from said company an order on the city of Charlevoix an order for the said amount of $12,000.00 payable in sums of $500 per month until fully paid, and which order shall be duly accepted by said city by its proper authority, and that the said party of the second part to said contract in his own name or in the name of said company, shall negotiate with the said city of Charlevoix for electric current to be supplied under such terms as they may agree, but which contract shall have a provision for a minimum payment by said city for such current of not less than thirty-five dollars

($35.00) per day and for a term sufficiently long to protect said order so payable to said Richardi.

"That said Richardi will accept one or the other of the said propositions, but in the event of his taking the order on said city in lieu of said bonds, that then and in that event the said company shall not issue the said bonds provided to be issued in said paragraph second of said contract, or if issued shall be at once canceled so as not to be a lien on the assets of said company.

"In witness whereof the said parties have hereunto set their hands and seals this eighth day of September, A. D. 1917.

"HENRY RICHARDI        (Seal)

"CHARLES S. ABBOTT    (Seal)."

"EXHIBIT C.

"This agreement, made and entered into by and between Charles S. Abbott, of Detroit, Michigan, party of the first part, and the city of Charlevoix, in the county of Charlevoix, and State of Michigan, a municipal corporation, party of the second part: Witnesseth, that said party of the first part has agreed to furnish and sell to the party of the second part all of the electric current that may be required by it within its corporate limits and environs, as hereinafter defined, for illuminating, power and other electrical purposes, and the said party of the second part has agreed and does hereby agree to purchase from the said first party all such current as it may require and demand at any and all times during the term of this contract for the connected load of said city and any increase or decrease in such load within the territorial limits specified in this contract, upon the terms and conditions hereinafter set forth.

"1. First party shall provide for and furnish the main transmission lines from its plant, or place of manufacturing such current, to the substation of second party, hereinafter mentioned, for the purpose of conveying such electric current to the point of distribution, and shall keep and maintain the voltage of 110 to 115 volts reasonably even and constant so that it shall not vary to exceed five per cent. on the 2,200 volt circuit at one hundred per cent. power factor; it being understood, however, that if said second party

shall use said current for intermittent power purposes at the same time that current is used for illuminating purposes, then said first party shall not be responsible for variation caused thereby during the time of starting or stopping power equipment.   *   *   *

"The said second party agrees to take the said electric current over the wires of said first party in amounts as the said second party may require for its own use, or for the purpose of selling or otherwise distributing within the territory herein specified; and agrees to pay therefor, the sum of   *   *   *   Provided, further, that the minimum sum of money to be paid by second party to first party for current for all purposes shall be the sum of twelve thousand seven hundred seventy-five dollars per annum to be computed on the basis of the entire amount of current used for all purposes from the first day of October to the thirtieth day of September, inclusive, of each year during the term of this contract, at the above stipulated rates.   *   *   *

"Settlement shall be made on or before the tenth day of each month for all current consumed by said second party during the preceding month and payment shall be made therefor at that time for all current so consumed at the rates heretofore fixed and stipulated.   *   *   *

### "XIII.

"This agreement shall be in force and operative for a term of ten years from and after the date hereof, upon the delivery by the respective parties of duplicate copies of this contract, and the terms and conditions hereof shall be binding and in full force during said term of ten years upon each of said parties, and their respective legal representatives, successors and assigns.

### "XIV.

"It is further expressly understood and agreed by and between the parties hereto that such electric current shall be supplied by first party by and from the power and steam plant located at Bellaire, Michigan, as soon as proper connection therewith can be made.   That as soon as the construction of transmission lines is completed, first party shall proceed at once to install a new 350 horse power combination

water wheel and generator at such Bellaire plant and put the same in operation for the manufacture of electric current to be supplied to second party as specified herein. That first party shall take immediate steps to install in Charlevoix, Michigan, the 500 horse power steam plant, or unit and generator now located at the village of Bellaire and used by Henry Richardi in connection with the power plant first above mentioned. * * *

"XVI.

"It is further expressly understood and agreed by and between the parties hereto, that if the said party of the first part shall fail to deliver the current of electricity above provided, to be by him delivered to said second party, and if such failure shall be caused by the neglect of said first party to properly maintain and keep in repair or properly operate his said plant, including the generating machinery, equipment, appliances or transmission lines, and if after notice by second party to him, requiring him to remedy said defect or defects, describing them, and to supply the said current as required by this contract, he shall still neglect and fail to deliver such current in amount and in accordance with the terms hereof for a period of five days from and after the date of service of such notice, as aforesaid, then and in such case the said second party shall have the right to enter upon the premises of said first party at said village of Bellaire, or in the city of Charlevoix, or any part thereof, upon which the said generator plant, or plants are situated and take possession of said plant and transmission lines, together with the dam, water power and appurtenances, steam plant, and all other equipment, machinery and appliances, and operate the same and make such repairs as may be necessary to put it in a condition to perform the service required of it by the terms of this contract and to appropriate the revenues and proceeds of operation of said plant to the payment of the outlay necessarily incurred by it in the premises and to account to said first party for the balance of such revenues, if any, until such time as said party shall be willing, ready and able to properly operate said plant or plants, so as to deliver the current to second party as required by the terms of this con-

tract; at which time said second party shall deliver and surrender up said plant and equipment to first party.    *    *    *

" "It is further understood and agreed by said parties and it is part of the consideration of this agreement, that said first party shall procure an assignment from Henry Richardi of Bellaire, Michigan, or his assignees, of any and all contracts which may have been heretofore made and entered into by and between said Henry Richardi or his assignees, and the second party hereto in relation to the furnishing and delivery of electric current to the city of Charlevoix by said Richardi, or his assignees, and thereupon cancel, and surrender to the second party hereto, the said contract or contracts, together with a release and satisfaction duly made and executed by said Henry Richardi, or his assignees, and said first party hereto, expressly and unconditionally releasing and discharging the said city of Charlevoix from any and all claims, accounts and damages of whatsoever kind of the said Henry Richardi or his assignees against the said city of Charlevoix.  And this contract, and the execution and delivery of the same shall be considered as conditional upon the procurement of said release and assignment by said first party on or before November 1st, 1917. In default thereof this contract shall be of no further force or effect.

"It is further agreed by the parties hereto that said first party shall on or before October 15, 1917, enter into a bond in the penal sum of $10,000 payable to the city of Charlevoix, in the county of Charlevoix and State of Michigan, a municipal corporation, conditioned for the faithful performance of the agreement herein contained and expressed to remove and install in the said city of the 500 horse power steam plant, now located at Bellaire, Michigan, and forming a part of the plant known as the Richardi plant.  Provided, that said city shall provide the site for the same as herein specified.  In default of the execution of such bond this contract shall be null and void and of no further force and effect.    *    *    *

"In witness whereof the said parties hereto have executed this contract, the said city of Charlevoix, by its mayor and city clerk and under the seal of said

224—Mich.—17.

city, and the said party of the first part by affixing his hand and seal hereto, this 14th day of September, A. D. 1917, in duplicate.

"CHARLES S. ABBOTT.    (Seal)

"CITY OF CHARLEVOIX.

"By: SIMON M. ROSS,

"Its Mayor.

"By: CHARLES H. EMERY,

"Its City Clerk."

Mr. Abbott never secured any other agreement from either Mr. Richardi or the city of Charlevoix, and soon after November 1, 1917, the city entered into negotiations with Mr. Richardi which negotiations finally resulted in the purchase by the city of the Richardi plant.    The bill of complaint in this case was filed in April, 1921.    It asks for the specific performance of the contracts before mentioned, for an accounting and for the establishment of an express and a constructive trust growing out of the papers before quoted, and a claimed oral agreement that the city was taking over the property in recognition of Mr. Abbott's rights and for his benefit.    It was claimed on the part of the city that Mr. Abbott simply had an option with Mr. Richardi which he never exercised.    It is the further claim that he never performed his contract with the city and that he abandoned both the option with Mr. Richardi and his contract with the city.    It is also claimed he informed the members of the common council that he could not carry out his arrangement with Mr. Richardi, and that if the city could deal with him it had better do so.    Mr. Abbott explains his delay in beginning this case by saying he was lulled into a feeling of security by the statement that the city was acting in his interest.    The case was heard in open court.    The record contains more than 450 pages. The bill of complaint was dismissed and the case is in this court by appeal.

The chancellor filed a written opinion from which we quote as follows:

"The evidence does not establish that there was a conspiracy between the city of Charlevoix, the Power Company and Mr. Richardi, or any of them, to take this property from Mr. Abbott nor to injure him in any way in what was done. Nor does the evidence establish that the city of Charlevoix took this property over to hold for Mr. Abbott or to aid him in the purchase of the same.

"If the plaintiff has any right in the subject-matter of this litigation, it must be such legal rights as are created by Exhibits 'A,' 'B' and 'C,' which existed after Nov. 7th, 1917, and were not waived by plaintiff.

"The preponderance of evidence shows that plaintiff (Abbott) informed members of the council of Charlevoix city, part of them at least, individually and in council assembled, in substance, that he was not able to complete his arrangement with Richardi, and if they (the city) could do anything with him (Richardi) to go ahead.

"The first important question is to determine what rights plaintiff acquired under Exhibits 'A' and 'B.'

"Exhibit 'A' is unilateral, as it is signed by Richardi only.

"Exhibit 'B' is signed by both Richardi and Abbott and expressly states therein that Exhibit 'A' is an 'option agreement.' The further provision is contained in Exhibit 'B' that in the event of its being inadvisable or impractical to sell the $12,000 bonds provided for in paragraph second of Exhibit 'A' that in lieu of sale Richardi may himself take the bonds at face value or at his option may take, have and receive from said company an order on the city of Charlevoix for $12,000 payable $500 per month.

"It also provides that Abbott shall in his own name or in the name of the company negotiate with the city of Charlevoix for electric current under such terms as they may agree. It also fixes the minimum charge for each day, and provides it shall be for a term sufficiently long to protect the $12,000. Exhibit 'B' also provides that Richardi will accept one or the other (the bonds or an order for $12,000 accepted by the

city), and if Richardi accepts the order no bonds shall be issued for the $12,000 or if issued shall be canceled.

"Exhibit 'B' modifies the terms and conditions named in Exhibit 'A' by providing for negotiations with the city of Charlevoix, and if said negotiations result in a contract, permitting it, Richardi may have his choice of $12,000 bonds or an order accepted by Charlevoix city for $500 a month until the $12,000 is paid.

"Exhibits 'A' and 'B' considered separately or together and giving full consideration to all the provisions therein, constitute an offer to sell and transfer within sixty days from Sept. 8, 1917, the capital stock of the Hydraulic Company for a consideration therein named.

"It does not provide for a transfer or an assignment of the capital stock for the purpose of reorganization of the company or for exploitation, but it does in express terms state what should be received by Richardi for such transfer. These exhibits in no way obligate Richardi to transfer the capital stock, all of which was owned by him, until the consideration for so doing was ready to be turned over to him.

"Counsel for plaintiff contend that Abbott could not do anything to effect a bond issue until he had control of the company or the capital stock, and without which exhibits 'A' and 'B' were an unworkable contract.

"The terms, conditions and consideration for the transfer within sixty days provided for in Exhibit 'A' are as follows: Second party (Abbott) 'is to cause to be issued pursuant to the regulations of the Michigan railroad commission, a six per cent. first mortgage bond issue in an amount not to exceed $100,000 face value; the first $23,000 to retire the bonds then existing on the plant. The next $12,000 to be at once sold and their face value paid to Richardi to apply on the purchase price of said capital stock. The next $50,000 bonds to go to Richardi, and the $15,000 balance if sold to be used in betterments, improvements and extensions of the plant.'

"Under this arrangement, Mr. Abbott was to cause this bond issue, get the approval of the railroad commission, provide for the extension of or payment of the $23,000 bonds then due, and sell at face value the

$12,000 bonds and pay the proceeds to Richardi and tender him the balance of $50,000 bonds.

"Abbott at no time asked or requested Richardi personally or as the stockholders of the capital stock of the Hydraulic Light & Power Company or suggested to Richardi any resolutions, record proceeding or action to be made, taken or had by him or the company to the end that he (Abbott) might cause to be issued, pursuant to the regulations of the railway commissioner, the bonds in question, so that he might take care of the $23,000 bonds then due, sell the $12,000 to pay Richardi and tender him the $50,000 balance for the transfer of the capital stock.

"Abbott was to cause this to be done, and Richardi in no way hindered or prevented him from doing so, and Richardi was ready and willing to do for himself and the Hydraulic Power Company all that was necessary to be done so that Abbott could accomplish the terms, conditions and consideration mentioned in Exhibits 'A' and 'B.'

"Plaintiff drew Exhibits 'A' and 'B,' and declared therein in express language, that the writings are an 'option agreement.' Also in his letter to Richardi under date of November 2, 1917, being Exhibit 14, refers to Exhibits 'A' and 'B' in the following language: 'With further reference to the contract and option of September 8th,' etc., and in another place in the letter he says 'In the taking of the option from you,' etc. Exhibit 23 refers to them as an option.

"The above language used by plaintiff places his construction on the instruments and shows that he at all times considered it an option, privilege to purchase, and not a contract of purchase.

"Richardi at all times construed Exhibits 'A' and 'B' to be an option to be performed by Abbott within sixty days. (See Exhibit 23.)

"If an action had been brought by Richardi at the expiration of the time limit against Abbott for non-performance, an available defense would be that Exhibits 'A' and 'B' are an option, and the courts would have so held. It would have been determined that these exhibits constitute an option privilege to purchase, and that they are not a contract of purchase where any title or interest passed.

"Time was and is an important factor in Exhibits 'A' and 'B,' and is of the essence of this agreement, and should be so held, where the claiming party has not within the time limit done anything or accomplished anything to produce results that would in any way comply with the terms, conditions and consideration named in the agreement.

"Both Abbott and Richardi so treated and so construed this agreement.

"Abbott in his letter of November 2nd (Exhibit 14), says: 'There is still a few days left within which you can co-operate for concurrent acts on your part.'

"On November 5th, Richardi replied by letter (Exhibit 15) : '*   *   *   I sincerely regret that you have not succeeded in establishing the requirements of the option which were to be performed on your part before I was required to take further action.   *   *   *   The paper which you wished me to sign was to my mind simply an extension of the option.'   *   *   *

"The proposed agreement, Exhibit 23, is not in harmony with nor the same as Exhibits 'A' and 'B.' To my mind it is a new agreement.

"Exhibit 18, the agreement made by the city committee to turn over temporarily to Mr. Abbott The Rock Product Company plant until he (Abbott) completed his arrangements with Richardi, is not a part performance of the provisions expressed in Exhibits 'A,' 'B' and 'C.'

"With this view of the facts and construction of Exhibits 'A,' 'B' and 'C,' I do not find that plaintiff has any rights thereunder against either or any of the defendants.   It follows that the bill may be dismissed."

Counsel in a very long brief insists that Mr. Abbott has been very greatly wronged, that the city secretly purchased away from him a valuable right, and that it should be required to compensate him.

The rule is very well established that when a plaintiff comes into a court of equity he must establish a case by a preponderance of proof.   Unfortunately for· Mr. Abbott he has failed to do this.   Six or eight witnesses do not remember important conversations

as he remembers them.     The conduct of the parties is not consistent with the present claim of Mr. Abbott. The contract Mr. Abbott had with Mr. Richardi provided for a sale of the plant to Mr. Abbott within sixty days of its date "upon the terms, conditions and considerations hereinafter set forth."     Those terms, conditions and considerations have never been fulfilled by Mr. Abbott.     By subdivisions 21 and 22, of Mr. Abbott's contract with the city of Charlevoix, he was required to do very important things.     "In default thereof this contract shall be of no further force or effect."     Mr. Abbott did not meet these requirements. The opinion and decree of the court below are fully justified by the preponderance of the evidence.

The decree is affirmed, with costs to the appellees.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.